IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KARL JOSEPH SCHMIEDING,   :
              Petitioner,   :     1:11-cv-2096
                                :
      v.                     :
                                :     Hon. John E. Jones III
COMMONWEALTH OF        :
PENNSYLVANIA, HUNTINGDON :
COUNTY DISTRICT ATTORNEYS :
OFFIC, *et al.*,            :
             Respondents.   :

## **MEMORANDUM**

### **June 21, 2018**

Petitioner Karl Joseph Schmieding ("Petitioner" or "Schmieding"), a state inmate currently confined at the State Correctional Institution at Forrest (SCI-Forrest), Marienville, Pennsylvania, initially filed his petition (Docs. 1, 7) for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on May 5, 2011, seeking relief from his pleas of guilty to all counts in Court of Common Pleas of Huntingdon County, Pennsylvania, criminal case CP-31-CR-0000465-2005, and Court of Common Pleas of Franklin County, Pennsylvania, criminal docket number CP-31-0000074-2006. (Doc. 1, p. 1). The matter is proceeding *via* a second amended petition, dated August 25, 2017. (Doc. 42). The second amended petition is ripe for disposition. (Docs. 42, 43, 50, 52, 53). For the reasons that follow, the Court will deny the petition for writ of habeas corpus.

# I. FACTUAL AND PROCEDURAL BACKGROUND

## A. State Court Proceedings

The Superior Court of Pennsylvania, in considering Schmieding's appeal of

the denial of relief pursuant to the Post Conviction Relief Act ("PCRA"), 42

Pa.C.S.A. §§9541-9546, set forth the following relevant procedural background:

> On September 8, 2006 [sic][1], Appellant pled guilty to various sexual offenses against minors. At [Huntingdon County] docket number CP-31-0000465-2005, Appellant entered a guilty plea to Photographing a Child Involved in Prohibited Sexual Acts, Possession of Child Pornography, Contact with a Minor for the Purpose of Engaging in Sexual Abuse, Unlawful Use of a Computer, Unlawful Contact with a Minor, and four counts of Indecent Assault. [18 Pa.C.S.A. §§ 6312(b); 6312(d); 6318(a)(5); 7611(a)(1); 6318(a)(1); and 3126, respectively.] At [Franklin County] docket number CP-31-0000074-2006, Appellant entered a plea to 13 counts of Possession of Child Pornography and one count of Unlawful Use of a Computer. [18 Pa.C.S.A. §§ 6312(d) and 7611(a)(1), respectively.] After reviewing a pre-sentence investigation report ("PSI"), the trial court sentenced appellant to an aggregate term of incarceration of 89 ½ to 215 months. Appellant did not pursue a direct appeal.

> On September 17, 2006, Appellant filed a counseled PCRA petition. An amended PCRA petition followed on September 28, 2012. Although a hearing was conducted on January 9, 2014, Appellant's [PCRA] counsel was subsequently disbarred, for reasons not of record, and new counsel was appointed. A new evidentiary

---

[1] Schmieding entered pleas of guilty on March 17, 2006. (Doc. 50-7, pp. 25-33). His sentencing took place on September 8, 2006. (*Id.* at 34-66).

hearing was held on October 3, 2014. The PCRA denied Appellant's petition.

(Doc. 50-5, pp. 2-3).

In his timely appeal from the denial of PCRA relief to the Superior Court of Pennsylvania, Schmieding raised the following issues:

1. Whether the PCRA [c]ourt erred in ruling that the [guilty plea] was knowingly, voluntar[ily], and intelligently made where there was evidence that neither his attorney nor the [c]ourt understood the plea/sentencing?

2. Whether the PCRA [c]ourt erred in finding [Appellant's trial] attorney effective where said attorney failed to call defense witnesses for [Appellant] at the time of sentencing?

3. Whether [Appellant's] attorney was ineffective for his failure to file an appeal?

(*Id.* at 3). The Superior Court affirmed the PCRA Court on February 2, 2016.

(Doc. 50-5, p. 10). On September 29, 2016, the Supreme Court of Pennsylvania denied Schmieding's Petition for Allowance of Appeal. (Doc. 50-6).

## B. Federal Court Proceedings

Schmieding initiated this action with the filing of a petition for writ of habeas corpus on May 5, 2011 in the United States District Court for the Western District of Pennsylvania. (Docs. 1, 7). On November 11, 2011, the matter was transferred to this Court. On January 31, 2012, the Court stayed the petition to

allow Petitioner to fully exhaust his state court remedies. (Doc. 20). On January 4, 2017, Schmieding filed a motion seeking to lift the stay as he had exhausted his state court remedies. (Doc. 36). On May 2, 2017, the Court granted Petitioner's motion, lifted the stay, and afforded him the opportunity to file an amended petition. (Doc. 38). He filed an amended petition on June 23, 2017. (Doc. 39). He filed a second amended petition two months later. (Doc. 42). The Respondent filed a response on January 23, 2018 (Doc. 50) and on February 12, 2018, Petitioner filed a traverse. On April 10, 2018, the Court issued an order directing the parties to supplement their filings to address all seven grounds raised by Petitioner. Respondent filed a supplemental response on April 13, 2018. (Doc. 55); Petitioner filed a supplemental reply on May 4, 2018 (Doc. 56).

## II. <u>ISSUES PRESENTED IN FEDERAL PETITION</u>

1. The sentences were grossly disportinate [sic] to the crimes which violated the petitiners [sic] constitutional right agaist [sic] cruel and unusual punishment.

2. Petioner [sic] was denied his right to direct appeal on every sentencing by Counsel Abeln.

3. Ineffective Assistance of Counsel Abeln.

4. Ineffective Assistance of Counsel Rominger and Counsel Ghaner PCRA Attorneys. Ablen Trial Attorney.

5. Ineffective Assistance of Counsel Ghaner.

4

6.     Breach of Plea Agreement.

7.     Failure to consolidate or/and merge offenses for plea agreement/or then separated case after petitioner accepted plea.

(Doc. 42, pp. 10-11).

## III.   <u>DISCUSSION</u>

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 498-99 (1973).  Petitioner's case is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA").  28 U.S.C. § 2254, provides, in pertinent part:

(a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
...

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding....

28 U.S.C. § 2254.  Section 2254 sets limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *Glenn v. Wynder*, 743 F.3d 402, 406 (3d Cir. 2014).   A federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

By limiting habeas relief to state conduct which violates "the Constitution or laws or treaties of the United States," § 2254 places a high threshold on the courts. Typically, habeas relief will only be granted to state prisoners in those instances where the conduct of state proceedings resulted in a "fundamental defect which inherently results in a complete miscarriage of justice" or was completely inconsistent with rudimentary demands of fair procedure. *See, e.g., Reed v. Farley*, 512 U.S. 339, 354 (1994).

A.    <u>Non-Cognizable Claims</u>

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal

court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21, 96 S.Ct. 175, 177, 46 L.Ed.2d 162 (1975) (*per curiam*)." *Estelle v. McGuire, 502 U.S. 62*, at 67–68 (1991). "[F]ederal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *see also Pulley v. Harris*, 465 U.S. 37, 41 (1984).

In grounds four and five, Petitioner contends that PCRA counsel were ineffective in failing to communicate with each other and with trial counsel to obtain critical information.[2] (Doc. 42, pp. 10, 11). Freestanding claims of ineffective assistance of PCRA counsel are not cognizable on federal habeas review. 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."); *see also Coleman v. Thompson*, 501 U.S. 722, 752–53 (1991); *Pennsylvania v. Finley*, 481 U.S. 551, 555–56 (1987). Accordingly, these claims will be denied as non-cognizable.

B. **Exhaustion and Procedural Default**

---

[2] Schmieding also sets forth an ineffective assistance of trial counsel claim in ground four. This claim will be addressed in the exhaustion and procedural default section.

Habeas relief "shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  The state courts must have the first opportunity to redress any claimed violation of a habeas petitioner's federal rights.  *Picard v. Connor*, 404 U.S. 270, 275–76 (1971).  The habeas statute codifies this principle by requiring that a petitioner exhaust the remedies available in the courts of the State, 28 U.S.C. § 2254(b)(1)(A), meaning a state prisoner must "fairly present" his claims in "one complete round of the state's established appellate review process," before bringing them in federal court. *O'Sullivan*, 526 U.S. at 845 (stating "[b]ecause the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, . . .  state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established review process."); *see also Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Picard*, 404 U.S. at 275 (1971); *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997).

Relief cannot be granted unless all available state remedies have been exhausted, or there is an absence of available state corrective process, or circumstances exist that render such process ineffective to protect the rights of the

applicant.  *See* 28 U.S.C. § 2254(b)(1).  The exhaustion requirement is grounded

on principles of comity in order to ensure that state courts have the initial

opportunity to review federal constitutional challenges to state convictions.  *See*

*Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000).  Federal habeas courts " 'will

not review a question of federal law decided by a state court if the decision of that

court rests on a state law ground that is independent of the federal question and

adequate to support the judgment.' " *Lambrix v. Singletary*, 520 U.S. 518, 522

(1997) (quoting *Coleman*, 501 U.S. at 729.

The claims contained in grounds one, six and seven, and the ineffective

assistance of counsel claim contained in ground 4, are unexhausted as Schmieding

wholly failed to present them to the state courts.  As noted *supra*, the state courts

must have the first opportunity to redress any claimed violation of a habeas

petitioner's federal rights.  *Picard*, 404 U.S. at 275–76.  A petitioner has exhausted

a federal claim only if he or she presented the "substantial equivalent" of the claim

to the state court.  *Picard*, 404 U.S. at 278; *see also McCandless v. Vaughn*, 172

F.3d 255, 261 (3d Cir. 1999) (holding that petitioner must present both "factual

and legal substance" of claim to state courts).  The exhaustion requirement would

"serve no purpose if it could be satisfied by raising one claim in the state courts

and another in the federal courts." *Picard* 404 U.S. at 276.  The federal claims

raised in the state courts need not be identical to the claims now pursued in federal court. *Id.* at 277 (recognizing that petitioner is entitled to "variations in the legal theory or factual allegations used to support a claim"). Review of the record confirms that Schmieding wholly failed to present the aforementioned claims to the state courts.

"When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, as is the case here, the exhaustion requirement is satisfied because there is 'an absence of available State corrective process.' 28 U.S.C. § 2254(b). In such cases, however, applicants are considered to have procedurally defaulted their claims and federal courts may not consider the merits of such claims unless the applicant establishes 'cause and prejudice' or a 'fundamental miscarriage of justice' to excuse his or her default. *See Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)." *McCandless*, 172 F.3d at 260.

To demonstrate "cause" for a procedural default, a petitioner must point to some objective external factor which impeded his efforts to comply with the state's procedural rule. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). "Prejudice" will be satisfied only if he can demonstrate that the outcome of the state

10

proceeding was "unreliable or fundamentally unfair" as a result of a violation of federal law. *See Lockhart v. Fretwell*, 506 U.S. 364, 366 (1993).

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," *Murray*, 477 U.S. at 496, then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496. A petitioner establishes actual innocence by asserting "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).

He fails to demonstrate "cause for the default and prejudice attributable thereto," or "that the failure to consider the federal claim will result in a fundamental miscarriage of justice." *Harris v. Reed*, 489 U.S. 255, 262 (1989). *See also*, *Werts*, 228 F.3d at 192-93 (A petitioner can overcome procedural default,

and thereby empower the habeas court to entertain the merits of the habeas claim, with a showing of "cause and prejudice" or by demonstrating a fundamental "miscarriage of justice."); *see also Schlup v. Delo*, 513 U.S. 298, 321 (1995) (The miscarriage of justice exception is "explicitly tied...to the petitioner's innocence."). This matter was stayed for a significant number of years while he pursued collateral relief in state court. During that time period, he twice amended his PCRA petition. However, he neglected to raise the claims contained in grounds one, six or seven. The claims at issue are presented here, in federal court, in the first instance. The failure to raise the issues in state court is wholly attributable to Schmieding and his failure to pursue them during collateral review and, therefore, cannot form the basis for cause and prejudice. Further, Schmieding does not contend that he is actually innocent. Consequently, there is no basis on which to excuse his procedural default of these claims.

### C. Claims Adjudicated on the Merits by the State Courts

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), federal courts reviewing a state prisoner's application for a writ of habeas corpus may not grant relief "with respect to any claim that was adjudicated on the merits in State court proceedings" unless the claim (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal

law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"[B]ecause the purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction," *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (internal quotations and citations omitted), "[t]his is a difficult to meet and highly deferential standard . . . which demands that state-court decisions be given the benefit of the doubt." *Cullen*, 563 U.S. at 181(internal quotation marks and citation omitted). The burden is on Kittrell to prove entitlement to the writ. *Id.*

A decision is "contrary to" federal law if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A decision is an "unreasonable application" of federal law if the state court identified the correct governing legal rule but applied the rule to the facts of the case in an objectively unreasonable manner. *Renico v. Lett*, 559 U.S. 766, 773 (2010). A decision is based on an "unreasonable determination of the facts" if the state court's factual

findings are objectively unreasonable in light of the evidence presented to the state court.  *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Finally, Section 2254(e) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

The claims adjudicated on the merits allege ineffective assistance of trial counsel.  Specifically, in ground three, Schmieding contends that counsel was ineffective in failing to adequately advise him with regard to his plea bargain and the subsequent entry of his plea.  (Doc. 42, pp. 10, 11).  In his second ground for relief, Petitioner argues that counsel was ineffective in failing to file his direct appeal.  (Doc. 42, p. 10).  It also appears that he is contending that counsel was ineffective in failing to call character witnesses at sentencing.  (Doc. 56, pp. 15-19).

## 1.    Clearly Established Federal Law

In setting forth the standard for ineffective assistance of counsel, the Superior Court stated as follows:

It is well settled that

[t]o plead and prove ineffective assistance of counsel a petitioner must establish: (1) that the underlying issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act.

*Commonwealth v. Rykard*, 55 A.3d 1177, 1189-1190 (Pa. Super. 2012), appeal denied, 64 A.3d 631(Pa. 2013) (citation omitted). "Generally where matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interests." *Commonwealth v. Colavita*, 993 A.2d 874, 887 (Pa. 2010) (citation omitted). A failure to satisfy any prong of the test will require rejection of the claim. *See Commonwealth v. Spotz*, 84 A.3d 294, 311 (Pa. 2014).

(Doc. 50-5, p. 4).

The clearly established Federal law governing ineffective assistance of counsel claims, as determined by the Supreme Court of the United States is as follows:

Ineffective assistance of counsel claims are "governed by the familiar two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." *Shelton v. Carroll*, 464 F.3d 423, 438 (3d Cir. 2006) (citing *Wiggins v. Smith*, 539 U.S. 510, 521, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)). For AEDPA purposes, the *Strickland* test qualifies as "clearly established Federal law, as determined by the Supreme Court." *Williams*, 529 U.S. at 391, 120 S.Ct. 1495. Under *Strickland*, a habeas petitioner must demonstrate that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's error, the result would have been different. 466 U.S. at 687, 104 S.Ct. 2052. For the deficient performance prong, "[t]he proper measure of attorney performance remains simply reasonableness

under prevailing professional norms." *Id.* at 688, 104 S.Ct. 2052. This review is deferential:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance....

*Id.* at 689, 104 S.Ct. 2052

Not every "error by counsel, even if professionally unreasonable, ... warrant[s] setting aside the judgment of a criminal proceeding." *Id.* at 691, 104 S.Ct. 2052. "Even if a defendant shows that particular errors of counsel were unreasonable, ... the defendant must show that they actually had an adverse effect on the defense"; in other words, the habeas petitioner must show that he was prejudiced by counsel's deficient performance. *Id.* at 693, 104 S.Ct. 2052. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052.

In assessing an ineffective assistance of counsel claim, "the ultimate focus of inquiry must be on the fundamental fairness of the proceeding.... In every case the court should be concerned with whether ... the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." *Id.* at 696, 104 S.Ct. 2052.

*Rainey v. Varner*, 603 F.3d 189, 197–98 (3d Cir. 2010). The Third Circuit has held

that the Pennsylvania ineffectiveness test is not contrary to the Supreme Court's

*Strickland* standard. *See Werts v. Vaughn*, 228 F.3d 178, 204 (3d Cir. 2000). Thus, the state court's application of the Pennsylvania three-pronged test was not "contrary to clearly established federal law."

When the state court has decided the claim on the merits, as is the case here, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' " *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id.*

> **2.** **Application of Federal Law and Determination of Facts in Light of Evidence Presented in the State court proceedings.**

> a.    <u>Guilty Plea</u>

On September 8, 2006, Schmieding pled guilty to various sexual offenses against minors and numerous child pornography charges; he was subsequently sentenced to an aggregate term of incarceration of 89 ½ to 215 months.  He argues that he "was told about the deals 5 max he would be serving in county[;] 20 years if he didn't take the pleas.  Petitioner accepted the pleas[,] signed everything[,] did

everything they wanted. Yet what his advice and promise told petitioner were far

apart. Petitioner ended up with what he was threatened with as a max in each

county or very close to it." (Doc. 56, p. 17). He essentially argues that the

ineffective assistance of counsel caused him to enter an involuntary or unknowing

guilty plea.[3] (Doc. 42, pp. 10, 11; Doc. 56, pp. 17-19).

---

[3]To be clear, Schmieding is not challenging the adequacy of the trial court's plea colloquy. Although he raised the issue in his PCRA proceedings, the Superior Court deemed the issue waived for failure to raise it in a post-sentence motion or to pursue it in a direct appeal. "*See* 42 Pa.C.S. § 9544(b) ('[A]n issue is waived if the petitioner could have raised it but failed to do so before trial, during unitary review, on appeal or in a prior state postconviction proceeding.' *Commonwealth v. Rachak*, 62 A.3d 389, 391 (Pa. Super. 2012), appeal denied 667 A.3d 796 (Pa. 2013) ('While [the a]ppellant focuses on the voluntariness of his guilty plea, that issue should have been raised on direct appeal; it was not. Therefore, the issue is waived.' (footnote omitted))." (Doc. 50-5, p. 6).

Nonetheless, the record reveals that the trial court conducted the colloquy in accordance with the Pennsylvania Rules of Criminal Procedure. The colloquy must inquire into the following areas:
> (1) Does the defendant understand the nature of the charges to which he or she is pleading guilty or nolo contendere?
> (2) Is there a factual basis for the plea?
> (3) Does the defendant understand that he or she has a right to a jury trial?
> (4) Does the defendant understand that he or she is presumed innocent until found guilty?
> (5) Is the defendant aware of the permissible range of sentences and/or fines for the offenses charged?
> (6) Is the defendant aware the judge is not bound by the terms of any plea agreement tendered unless the judge accepts such agreement?

*Commonwealth v. Rush*, 909 A.2d 805, 808-09 (Pa. Super. 2006) (citing *Commonwealth v. Pollard*, 832 A.2d 517, 522-23 (Pa. Super. 2003)); PA. R. CRIM. P. 590(A)(2) (Comment). During the oral guilty plea colloquy, in the written colloquy, and at the sentencing hearing, prior to the imposition of sentence, the following areas identified in PA. R. CRIM. P. 590 were addressed: the nature of the charges to which petitioner was pleading guilty (Doc. 50-7, pp. 20, 26-29, 35-39), the factual basis for the plea (*id.* at 20, 26-28, 36-38), the right to a jury trial (*id.* at 20, 30), the presumption of innocence until proven guilty (*id.* at 20, 30, 31), the permissible range of sentence for the charges (*id.* at 21, 22, 27, 29, 37-42, 59, 60) and that the judge is not

On March 17, 2006, Schmieding appeared in the Court of Common Pleas of Huntingdon County for the purpose of entering guilty pleas to the matters at Huntingdon County docket number CP-31-0000465-2005, and Franklin County docket number CP-31-0000074-2006.

The transcript of that guilty plea hearing colloquy follows:

MR. STEWART:  Cases Numbers 465-2005 and 74 of 2006, Karl Schmeiding [sic].  Your Honor, these cases are on for guilty plea.

THE COURT:  Where are the Informations?

MR. STEWART:  I suspect they're still in the file.

THE COURT:  Would you endorse the informations to what the young man is pleading to?  [Schmieding signed the informations and indicated that he was "guilty as charged."  (Doc. 50-7, pp. 10, 11, 16-18).]  What is the criminal offense here?

MR. STEWART:  In 465 charges involve sexual abuse of children, unlawful contact with a minor, the unlawful use of a computer and indecent assault.  In 74 it's also sexual abuse of children, unlawful use of computer and multiple counts of the possession of child pornography on a computer.

THE COURT:  What is the code violation there?

---

bound by the term of the plea agreement (*id*. at 21).  Petitioner acknowledged that he understood the rights he was giving up and that he was doing so voluntarily.  (*Id*. at 23, 24, 30, 31, 38-40).  A presumption exists that Petitioner's statements at the plea allocution are truthful. *See Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) (stating that "[T]he representations of the defendant ... at [a plea] hearing ... constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity.")

MR. STEWART:  For 465 –

THE COURT:  What's the Title 18?

MR. STEWART:  It's 6312(d).  Those are all – they are all third degree felonies.

THE COURT:  The charges, young man, in 74 appear to contain 13 counts of por— of child pornography, which is a felony of the third degree.  Is that accurate?

MR. STEWART:  That's accurate.

THE COURT:  First I will tell you, Karl, that a felony of the third degree is punishable by a jail sentence of up to seven years and a fine of up to $15000.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Now it is not at all clear to me whether these charges would be a single charge for purposes of sentencing or not.  Mr. Stewart
what's your view on that?

MR. STEWART:  My view is that in the first case the charges involve the use of this Defendant photographing himself having indecent contact with stepson.  Is that right?  Stepson?

MR. ABELN:  Correct.

MR. STEWART:  He then put those images on his computer where they were discovered by another member of his family.

THE COURT:  That is in this case?

MR. STEWART:  That's an older case, first case.

MR. ABLEN:  465.

THE COURT:  I'm looking at 74 where you have all this possession of –

MR. STEWART:  In – what happened is the State Police executed a search warrant.  They searched the computer.  After searching the computer, they found multiple images of child pornography on the computer.  It would be our position that these – the multiple images of child pornography are separate offenses.

THE COURT:  You're also charge with accessing the computer.  Explain that to me.

MR. STEWART:  The basis of the charge is that he used the computer to photograph himself involved in indecent contact with his son.  That's the violation of Chapter 76 of the Crimes Code.  It is a separate third-degree felony.

THE COURT:  Do you understand the nature of what the Commonwealth is alleging, young man?

THE DEFENDANT:  Yes.

THE COURT:  Now the other charges involve the actual contact with a child.  Do you understand that?

THE DEFENDANT:  (Whereupon, the Defendant moved head vertically.)

THE COURT:  Once again you're looking at all felonies, I believe.

MR. ABELN:  There's about four felonies and the rest are misdemeanors to include corruption of the morals of a minor.

THE COURT:  My question, Karl, is No. 1, do you understand the nature of all these charges?

THE DEFENDANT:  Yes.

THE COURT:  Have you and your attorney had sufficient time to carefully review the Commonwealth's evidence?

THE DEFENDANT:  Yes.

THE COURT:  And do you – are you satisfied that you are guilty of these crimes?

THE DEFENDANT:  Yes.

THE COURT:  And you understand the rather harsh penalties that are involved?

THE DEFENDANT:  Yes.

THE COURT:  Did you complete the [Guilty Plea Colloquy] form that I'm holding in my hand?

THE DEFENDANT:  Yes.

THE COURT:  Did you sign your name at the end?

THE DEFENDANT:  Yes.

THE COURT:  Initial each page?

THE DEFENDANT: (Whereupon, Defendant moved head vertically.)

THE COURT:  Do you understand the rights you're giving up by entering these pleas here this morning?

THE DEFENDANT:  Yes.

THE COURT:  Not the least of which is your right to have your case treated and heard by a jury?

THE DEFENDANT:  Yes.

THE COURT:  A jury would be able to participate in selecting.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  You would be able to strike, get rid of, any juror that demonstrated the slightest bias towards you.  Do you understand that?

THE DEFENDANT: (Whereupon, the Defendant moved head vertically.)

THE COURT:  You also give up, young man, by entering pleas the constitutional presumption of innocence.  You're presumed innocent and it is the Commonwealth that has to prove beyond a reasonable doubt your guilt.  Do you understand that?

THE DEFENDANT:  Yeah.

THE COURT:  If you continue with this plea and I accept them, then you give up that presumption of innocence and you stand before me convicted.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Have you had enough time to confer with your attorney?

THE DEFENDANT: (Whereupon, the Defendant moved head vertically.)

THE COURT:  Do you need more time?

THE DEFENDANT: (Whereupon, the Defendant moved head horizontally.)

THE COURT: Still your intent and desire to enter these pleas?

THE DEFENDANT: Yes.

THE COURT: All right, we'll accept them and direct a presentence investigation. Do you want any type of special evaluation in terms of the presentence?

MR. ALBELN: He's being seen by a counselor now and I have a counseling report. He also has an appointment for a psychotherapist evaluation.

THE COURT: Where is he living now?

MR. ABELN: He's living in –

THE DEFENDANT: Newville

MR. ABELN: In Newville. I've arranged to have him evaluated with a doctor in Waynesboro and provide that information to the Probation Office.

THE COURT: All right, thank you, Counsel. See Probation and you'll be summoned back for sentencing at a later time, okay.

MR. ABELN: Thank you very much.

(Whereupon, the hearing was concluded.)

(Doc. 50-7, pp. 25-32). The "Guilty Plea Colloquy" form to which the judge

referred *supra*, included the following questions and responses, *inter alia*:

26.    Are you aware that the Court is not bound by the terms of any plea agreement entered into between you, your counsel and the Attorney for the Commonwealth, until the Court accepts such plea agreement?  <u>Yes</u>

27a. Do you understand that you have the right to file a motion or to orally move to withdraw your guilty plea at any time between today and the actual imposition of sentence?  <u>Yes</u>

 27b. Do you understand that if the Judge rejects any plea agreement or recommendation as to sentence, you will be allowed to withdraw your plea? <u>Yes</u>

28.  Are you aware of the permissible range of sentence and/or fines that can be imposed for the offenses to which you are pleading guilty? <u>Yes</u>

29.  Are you aware of the maximum sentence and/or fine, which the Court could impose upon you for each of the offenses to which you are pleading guilty?  <u>Yes</u>

30. Do you understand that any sentence imposed upon you for any of the offenses to which you are pleading guilty can be imposed consecutively to either (a) any sentence imposed upon you for any other offense for which you are pleading guilty in this case; or (b) any sentence imposed upon you in any other case?  <u>Yes</u>

31. Do you understand that "consecutive" sentences means that one sentence will follow after another and that "consecutive" sentences do not run at the same time? <u>Yes</u>

32.  Do you understand that the aggregate maximum sentence you could receive if you are pleading guilty to multiple offenses is the total of all maximum sentences for all the offenses added together? <u>Yes</u>

33. Do you understand that you have a right to have witnesses present at your guilty plea hearing to testify for you? Are you willing to give up that right and have the Attorney for the Commonwealth summarize the facts against you?  <u>Yes</u>

34.  After you enter your guilty plea and it is accepted by the Court, you still have a right to appeal your conviction. The appeal from a guilty plea is limited, however, to four grounds. They are:

    a.   that your guilty plea was not knowing, intelligent and voluntary;

    b.  that the Court did not have jurisdiction to accept your plea (in other words, the offenses for which you are pleading guilty did not occur in Huntingdon County);

    c.  that the Court's sentence. is beyond the maximum penalty authorized by law; and

    d. that your attorney was ineffective in representing you and advising you to enter a plea of guilty

Do you understand these four areas of appeal and what they mean? <u>Yes</u>

In order to appeal your conviction by a plea of guilty, you must within ten (10) days file a written motion to withdraw your guilty' plea and state any of the four above grounds as the basis for your petition to withdraw your guilty plea. This must be done within ten (10) days from the date you are sentenced. If you cannot afford a lawyer to represent you or you are contending that your attorney, who represented you at your guilty plea, was ineffective, you have the right to have other counsel appointed for you to raise those four claims. If you petition to withdraw your guilty plea is denied, you then, have thirty (30) days to file an appeal from that denial with the Superior Court of Pennsylvania.

> If you do not file your petition within ten (10) days of your sentence or do not file a Notice of Appeal to the Superior Court within thirty (30) days after your petition to withdraw your guilty plea is denied, you give up your right to ever complain again of any of those four areas, including ineffective assistance of Counsel.
>
> Do you understand the meaning of the various appeal rights that have just been explained to you? <u>Yes</u>
>
> ***
>
> 43. Are you satisfied with your representation by your attorney? <u>Yes</u>
>
> 44. Have you had sufficient time to consult with your attorney before reading this document and entering your plea of guilty? <u>Yes</u>
>
> 45. Has your attorney gone over with you the meaning of the terms in this document? <u>Yes</u>

(Doc. 50-7, pp. 19-24). Schmieding affirmed that he read the document in its entirety and fully understood its meaning and was still willing to enter a plea of guilty. (*Id.* at 23, 24).

On September 8, 2006, the time set for Schmieding's sentencing, prior to the imposition of sentence, the judge revisited the colloquy and thoroughly discussed the charges to which he pled guilty and their attendant penalties. The following are pertinent excerpts from the sentencing transcript:

> THE COURT: Mr. Schmeiding [sic], take a seat at the table, please. I think that might be easier. You too, Mr. Abeln. Now I have received a pre-sentence report in this case and I want you to – and we'll come back to that but I have been reviewing this case because, well, quite frankly, it's an extremely serious case and I'm not at all satisfied that I

did a very good job – in fact, I'm completely satisfied that I didn't do a very good job at the time I took your plea, young man, so I think I am inclined to begin today by discussing with you these two cases, okay?

THE DEFENDANT:  Yes, sir.

THE COURT:  Now, Karl, look at me.  Raise your right hand.  (Defendant was sworn.)

THE COURT:  Now I want you to speak up, okay?

THE DEFENDANT:  Yes, sir.

THE COURT:  How old are you?

THE DEFENDANT:  29.

THE COURT:  And, Karl, how far did you go in school?

THE DEFENDANT:  12th grade.

THE COURT:  I take it you can read, write, and understand the English language?

THE DEFENDANT:  (Whereupon, the witness moved head vertically.)  Yes, sir.

THE COURT: Now, Karl, it would be stupid for me to say to you that you don't understand the charges against you but you do understand, don't you, that the Commonwealth has made some very, very serious allegations against you and I'd like to go over some of these with you. And I might say to you that in reviewing your case, I came to the conclusion, by the way, that two of the charges that the Commonwealth has made don't belong there and I've already told Mr. Stewart and I'm not sure he disagrees too much that the two counts, one on each case, alleging a violation of section 7611 of the crimes

Code, which is by the way, a new crime, I don't think it fits, so I'm throwing out those counts and I'm not going to proceed on those. And I also believe that some of the charges for 1ack of a better word merge; that means, they get rolled together, but I want to make sure you understand what you're charged with.

I want to direct my attention to the Information at 465. The first charge made there alleges that you photographed a chi1d under the age of 18 involved in a prohibited sexual act. That's what it charges, Karl[,] unlawfully touched a youngster under the age of 13. And again this relates to the young man who was in the custody or is the son of your paramour. And along with that you are also charged with having unlawful contact with him for the purpose of indecent assault, committing an indecent assault. Both of those crimes, Karl, are misdemeanors of the first degree which means that you could receive for each a jai1 sentence of up to five years. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Now in the other Information filed to No. 74 of '06, it's not hard to understand I don't believe. You're charged with 13 counts of possession of chi1d pornography and the fact is that the way Mr. Stewart has charged it and I understand what he has done and I want to say to you that I think the Commonwealth—I'm sure you may not agree with me -- but I think the Commonwealth has done you a big favor.

It is my understanding -- correct me if I'm wrong, Mr. Stewart -- there were 13 discs, compact discs.

MR. STEWART: Right. There were 13 CD's and those discs contained 4,626 pictures. Now—

MR. STEWART: That's accurate, Your Honor.

THE COURT: Now I believe, Karl, that the Commonwealth could have charged you with 4,626 counts of possession of child pornography. They didn't. They charged you with 13 counts of possession of child pornography. And the other thing the commonwealth did, and again I understand it, they have charged it as a felony of the third degree which means as opposed to fe1ony of the second degree which means. that on each of those counts you could receive a jail sentence of up to seven years and a fine of up to $15,000. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And as I understand it, these discs were found after a -- the state Police obtained a search warrant and searched your computer or your possessions and they found these discs that contained these photographs. Is that correct?

THE DEFENDANT: Yes.

THE COURT: Now, young man, let me ask you this question: Do you have an understanding of the charges against you?

THE DEFENDANT: Yes.

THE COURT: Do you have any questions about these charges?

THE DEFENDANT: No.

THE COURT: Speak up now.

THE DEFENDANT: No.

THE COURT: Are you satisfied, young man, that you're guilty of these charges?

THE DEFENDANT: Yes.

THE COURT: Do you have any hesitation about the entry of your pleas?

THE DEFENDANT: No.

THE COURT: Do you understand the penalties that could be imposed against you here this morning?

THE DEFENDANT: Yes.

THE COURT: You're facing significant -these are all felonies with the --strangely in my opinion with the exception of what I consider to be the most serious crime what I consider to be the most serious crime which the legislature says is a misdemeanor and I don't understand that but I won't – you know, the actual assault the legislature makes it a misdemeanor but all of the other crimes are fe1onies. You understand that?

THE DEFENDANT: Yes.

THE COURT: Let me ask you, Mr. Abeln. You have been in contact with this young man and you have been representing him. Are you satisfied that he understands the nature of the charges against him and the potential penalties?

MR. ABELN: I do, Your Honor. We have discussed it.

THE COURT: You've reviewed these with him?

MR. ABELN: Yep.

THE COURT: Do you have any hesitation to say to this Court that he understands what he has pled guilty to?

MR. ABELN: I would like only to add a caveat that and that is that when the charges were made I understood the gravity of all of this and

I met with the District Attorney and we agreed to not put the young man --the young boy and his family through –

THE COURT: I have certainly given that thought I understand that.

MR. ABELN: So we waived all of the charges up without contesting any of them.

THE COURT: But are you saying to me and what I'm asking you is are you satisfied that -- how do you -- Mr. Schmeiding [sic] understands how necessary each of these -- did you review the penalties with him?

MR. ABELN: Yes, I did, Your Honor.

THE COURT: Is this your mother with you?

MR. ABELN: No. That's his mother.

THE COURT: His mother. Are you satisfied that your son knows what he's doing here[?]

MS. SCHMEIDING [sic]: Yes.

THE COURT: All right. Just want to make sure, Karl. Once again you're satisfied in your own mind· that you're guilty of these crimes?

THE DEFENDANT: Yes.

THE COURT: Well then, we'll proceed to sentencing. We have obtained and have a pre-sentence investigation report that is very comprehensive….

(Doc. 50-7, pp. 36-41).

A defendant's Sixth Amendment right to effective counsel extends to the plea process. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012); *Hill v. Lockhart*, 474 U.S. 52, 56-67 (1985).  In order for a guilty plea to be valid pursuant to the Fifth Amendment "it must represent a voluntary and intelligent choice among the alternative courses of action open to the defendant." *U.S. v. Jones*, 336 F.3d 245 (3d Cir. 2003) (citing *Hill*, 474 U.S. at 56).  Accordingly, when reviewing whether a plea is voluntary based upon a claim of ineffective assistance of counsel, the court utilizes the two-part test set forth in *Strickland*.  *Hill*, 474 U.S. at 58.

With regard to the first part of the Strickland test, the voluntariness of the plea depends on whether counsel's advice "was within the range of competence demanded for attorneys in criminal cases." *Hill*, 474 U.S. at 56. The prejudice prong of Strickland "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59. Stated differently, the defendant must demonstrate that there is a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*  A defendant must demonstrate that the decision to reject the plea bargain and proceed to trial "would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).

The standards relied upon by the Superior Court in considering the claim that "the ineffective assistance of counsel caused [Schmieding] to enter an involuntary or unknowing [guilty] plea," mirror Supreme Court precedent. Specifically, the Superior Court set forth the following relevant case law:

"A criminal defendant has the right to effective counsel during a plea process as well as during trial." *Commonwealth v. Rathfon*, 899 A.2d 365, 369 (Pa. Super. 2006) (quotation omitted). "Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea." *Commonwealth v. Hickman*, 799 A.2d 136, 141 (Pa. Super. 2002) (citation omitted). "Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Id.* (citations and internal quotation marks omitted).

In assessing the voluntariness of a guilty plea, we note that "[t]he law does not require that appellant be pleased with the outcome of his decision to enter a plea of guilty: All that is required is that [appellant's] decision to plead guilty be knowingly, voluntarily and intelligently made." *Commonwealth v. Yager*, 685 A.2d 1000, 1004 (Pa. Super. 1996) (*en banc*) (citation and internal quotation marks omitted). "A person who elects to plead guilty is bound by the statements he makes in open court while under oath and he may not later assert grounds for withdrawing the plea which contradict the statements he made at his plea colloquy." *Commonwealth v. Pollard*, 832 A.2d 517, 523 (Pa. Super. 2003) (citation omitted).

(Doc. 50-5, pp. 6, 7).

The PCRA court summarized the PCRA hearing testimony, concerning Schmieding's understanding of the plea agreement and his interaction with his counsel, as follows:

> In his testimony at the PCRA hearing held January 9, 2014, Petitioner was succinct. He testified that he entered his pleas of guilty because he believed there was a plea bargain "for three to five years to run concurrent with Franklin County". (N.T., January 9, 2014, at p. 3.) He said he realized immediately that the sentences imposed did not comport with his understanding of the agreement. He said he therefore wanted to appeal but had no opportunity to talk to his attorney again until a month later when they appeared in Franklin County. [Petitioner testified he received a consecutive eight (8) to twenty (20) year sentence in Franklin County]. Petitioner testified he told counsel to appeal.
>
> Gregory Abeln, Esquire, of Carlisle, Pennsylvania, testified that he represented Petitioner in both counties. He testified that he did in fact negotiate with the Huntingdon County District Attorney an agreement that Petitioner would receive a county sentence for the charges in CP-31-CR-456-2005. He related there was no agreement with respect to the charges in CP-31-CR-74-2006. Therefore, he said, Petitioner was sentenced in accord with the plea agreement. Attorney Abeln testified that Petitioner never requested that he appeal, and that had he made such a request, he would have filed it.
>
> Concerning the plea agreement, the District Attorney put the following on the record at sentencing:
>
>> "THE COURT: All right, thank you ma'am. By the way, there is no bargain here, is there?
>>
>> MR. STEWART: [T]here's no bargain in the second case, Your Honor. Second case was absolutely an open plea with no deal on sentencing.

THE COURT:  I wasn't aware there was a bargain on the first one.

MR. STEWART:  There was a bargain on the first one that was in 465.

THE COURT:  What was the understanding?

MR. STEWART:  The understanding is in 465 there would be a county sentence.  In 74 there was absolutely no bargain and the plea to all counts with the understanding that sentence was entirely up to the Court.  I'll be candid.  The first case was done to protect the young man from having to testify and the family did agree to that.  They were also aware at the time that that was done that there would be more charges filed and there would be no bargain in the second case.

THE COURT:  Well, correct me if I'm wrong, if the aggregate of the two sentences exceeds 60 months, it's a State sentence.

MR. STEWART:  That's accurate.

THE COURT:  So it can't be served in a county jail.

MR. STEWART:  And that's accurate.  I believe Mr. Abeln was aware of that at the time they entered the plea in the second case.

THE COURT:  All right."

(N.T., September 8, 2006, at pp. 27, 28.)

Petitioner was afforded the opportunity to allocate [sic] immediately after the District Attorney but he declined the opportunity to relate to the Court his understanding of the plea agreement.

(Doc. 50-7, pp. 135-37).

In his appeal of the PCRA court's decision, Schmieding specifically argued that "at the time he entered his guilty plea, he believed that he would receive a negotiated sentence of three to five years, to run concurrent to charges pending in Franklin County." (*Id.* at 8). He maintained that counsel misled him with regard to the penalty he was subject to under the plea agreement. (*Id.*). In concluding that the record did not support this assertion, the Superior Court stated as follows:

We first note that there was no plea agreement to the charges at docket number 74 of 2006. *See* N.T., Sentencing, 9/8/06 at 27. At docket number 465 of 2005, it appears that the agreement was only that Appellant would serve a county sentence, which the trial court noted would not stand if the aggregate of the sentences of both docket numbers exceeded 60 months. *See id.* at 27-28. Neither Appellant nor his counsel voiced any objection to proceeding with the guilty plea at that time. The trial court then proceeded to sentence Appellant at number 465 of 2005 to 24 ½ months to 59 months' imprisonment – a term *less* than the three to five year sentence Appellant now argues counsel "misled" him to believe he would receive under the agreement – to be served consecutive to the sentence imposed at number 74 of 2006.

Unfortunately, the record contains no document or other writing memorializing the exact terms of the plea agreement. However, it is clear that Appellant cannot seriously argue that he was misled by counsel to believe he would receive a sentence greater than the one actually imposed by the trial court. We can only assume that the crux of Appellant's argument is that he was misled by counsel to believe the sentence at 465 of 2005 would run concurrent, rather than consecutive to the sentence imposed at number 74 of 2006.

At the PCRA hearing, trial counsel testified that he actively discussed the plea negotiations with Appellant under the premise that, although

37

the Commonwealth would agree to the imposition of concurrent sentences, the recommendation was not part of the plea agreement or binding on the trial court. *See* N.T., PCRA Hearing, 10/3/14 at 7. As noted, we do not have the benefit of reviewing a written negotiated plea agreement. Nonetheless, based upon the record before us and what we are able to discern from the argument, such as it is, presented by the Appellant, we find that Appellant has failed to establish that he was prejudiced by counsel's actions or that counsel's actions otherwise caused Appellant to enter an unknowing or involuntary plea. Accordingly, this claim fails.

(*Id.* at 8, 9).

Review of the record bolsters the state court decision. The trial court detailed the charges contained in both matters and explained the accompanying penalties during the guilty plea colloquy hearing and the sentencing hearing. (Doc. 50-7, pp. 26-29, 36-38). Prior to imposing sentence, the court informed Schmieding that, with regard to Huntingdon County docket number CP-31-0000465-2005, two charges would be thrown out and others would "merge," leaving him with the two misdemeanors of the first degree charges, the unlawful touching of a youngster under the age of 13 and unlawful contact with a youngster under the age of 13, *i.e.* indecent assault. (*Id.* at 36, 37). The court noted that each charge carried a jail sentence of up to five years. At Franklin County docket number CP-31-0000074-2006, the court reiterated that Schmieding was facing 13 counts of child pornography, a felony of the third degree, which carries with it the

possibility of a jail sentence of up to seven years and a fine of up to $15,000.  (*Id.* at 38).  The court confirmed that Schmieding understood the nature of the charges and the penalties.  At no point, during either the guilty plea colloquy hearing or the sentencing hearing, was it ever represented or stated that there was an expectation that the impending sentences would run concurrently.

The court also queried whether he and his attorney had sufficient time to review the Commonwealth's evidence.  Schmieding responded affirmatively and indicated that believed he was guilty of the crimes and understood the "rather harsh penalties that are involved."  (*Id.* at 29).  He also indicated that he had enough time to confer with his attorney and was not in need of additional time.  (*Id.* at 31).  Moreover, he indicated that he was aware that the court was not bound by the terms of any plea agreement until the court accepted the plea agreement, understood his right to file a motion or to orally move to withdraw the guilty pleas at any time between the date of the pleas and the imposition of sentence, and understood that if the judge chose to reject the plea agreement or sentence recommendation, he would be allowed to withdraw the plea.  (*Id.* at 23).  At sentencing, trial counsel indicated that he was satisfied that Petitioner understood the nature of the charges against him and the potential penalties.  (*Id.* at 39).

We find nothing unreasonable with the state court's treatment of this claim.

We are to evaluate state courts' determinations of ineffectiveness claims under a "doubly" deferential standard. *See Knowlese*, 566 U.S. at 123. *See also Harrington v. Richter*, 562 U.S. 86 (2011). We must defer to the state courts' judgment, in that it had the benefit of evaluating the credibility of the testimony of both Petitioner and his trial counsel at the PCRA hearings. Accordingly, we conclude that the Superior Court's analysis did not involve an unreasonable application of clearly established federal law and did not constitute an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

### b. Sentencing

Although not entirely clear from the amended petition, it appears that Schmieding is also arguing, as he did during his PCRA proceedings, that trial counsel was ineffective for failing to call character witnesses at sentencing.

The PCRA court determined the claim lacked merit because Schmieding "failed to present any evidence" that the witnesses existed, were available, that counsel knew or should have known the existence of the witnesses, that the witnesses were willing to testify, and that the absence of the testimony was so prejudicial to have denied him a fair trial. (Doc. 50-7, pp. 138-39, citing *Commonwealth v. Miner*, 44 A.3d 684, 687 (Pa. Super. 2008). Nor did Petitioner

identify a single character witness in his appellate brief. (Doc. 50-4, pp. 19-20).

The Superior Court addressed the issue as follows:

> Trial counsel will not be deemed ineffective for failing to call a witness to testify unless it is demonstrated that:
>
> (1) the witness existed; (2) the witness was available; (3) counsel knew of, or should have known of the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony was so prejudicial to petitioner to have denied him or her a fair trial.
>
> *Commonwealth v. Brown*, 18 A.3d 1147, 1160-1161 (Pa. Super. 2011) (citation omitted).
>
> Herein, Appellant does not establish the identity of any character witnesses, their availability at the time of trial, or the substance of the witnesses' testimony. Without this necessary evidence we are unable to conclude that the absence of the testimony was so prejudicial to petitioner to have denied him a fair trial. Accordingly, the claim does not merit relief.

(Doc. 50-5, pp. 9, 10). This was a reasonable determination of the facts in light of the evidence presented, and did not involve an unreasonable application of clearly established federal law. This claim is without merit.

### c.    Direct Appeal

In ground two, Schmieding claims that trial counsel was ineffective for failing to file a direct appeal on his behalf to the Superior Court. In *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), the Supreme Court interpreted *Strickland*, 466 U.S.

668, as requiring defense counsel to consult with a defendant about whether he or she wishes to appeal a conviction. If that consultation occurs and the defendant does not express a wish to appeal, counsel is not *per se* professionally unreasonable for not filing an appeal. *Flores-Ortega*, 528 U.S. at 478. However, if a defendant expressed a wish to appeal, and counsel fails to file an appeal, counsel is professionally unreasonable. *See id.* at 477 (stating "[w]e have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable.").

The state court initially noted that "the unjustified failure to file a direct appeal is ineffective assistance of counsel *per se* and that a defendant need not demonstrate his innocence or show that he would have likely succeeded on appeal in order to meet the prejudice prong of the test for ineffectiveness. *See Commonwealth v. Mikell*, 968 A.2d 779, 781 (Pa. Super. 2009)." (Doc. 50-5, p. 4). The court recognized, however, that "Appellant bears the burden of proving that he requested an appeal and the counsel disregarded that request. A mere allegation will not suffice to prove that counsel ignored a defendant's request to file an appeal." (*Id.*) (citations omitted). This is in accord with applicable federal law.

In applying the law to pertinent facts, the Superior Court noted that, at his first PCRA evidentiary hearing, Schmieding testified that he requested trial counsel

to file an appeal on his behalf in person and in numerous letters.  (Doc. 50-5, p. 5).

During the Second PCRA evidentiary hearing, trial counsel testified that he

"executed with Appellant a document explaining his appeal rights, but that

Appellant never requested a direct appeal.  *See* N.T., PCRA Hearing, 10/3/14 at

13; Explanation of Appellate Rights, 9/8/06.  Counsel explained that had Appellant

requested a direct appeal, he would have filed it, as Appellant had an absolute right

to an appeal.  *See id*."  (Doc. 50-5, p. 5).  "In finding that Appellant had not met his

burden of proving that he requested trial counsel to file a direct appeal, the PCRA

court implicitly credited trial counsel's testimony. *See* Trial Court Opinion,

5/11/15 at 9."  (*Id.*)  The Superior Court then stated that "[b]ased on counsel's

testimony, as credited by the PCRA court, we find that Appellant has failed to

adequately support his claim that counsel ignored his request to file an appeal. *See*

*Commonwealth v. Anderson*, 995 A.2d 1184, 1189 (Pa. Super. 2010) (a PCRA

court's credibility determinations are binding on this Court where there is record

support for those determinations).  Accordingly, as Appellant has failed to meet his

burden of proof, his claim that trial counsel was ineffective for failing to file a

direct appeal is without merit."  (*Id.* at 6).

   The state court's determinations did not involve an unreasonable application

of clearly established Federal law.  Nor did they result in decisions based on an

unreasonable determination of the facts in light of the evidence.  Petitioner is not

entitled to relief on this claim.

IV.    **<u>CERTIFICATE OF APPEALABILITY</u>**

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a

certificate of appealability ("COA"), an appeal may not be taken from a final order

in a proceeding under 28 U.S.C. § 2254.  A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322 (2003).  Petitioner fails to demonstrate that a COA should issue.

The denial of a certificate of appealability does not prevent Schmieding from appealing the order denying his petition so long as he seeks, and obtains, a certificate of appealability from the Third Circuit Court of Appeals.  *See* Fed. R. App. P. 22(b)(1).

## V.    <u>CONCLUSION</u>

For the reasons set forth above, the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 will be denied.

A separate Order will enter